IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Barbara Harris, | ) | C/A No. 3:07-0421-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Richland Community Health Care Association, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This employment discrimination matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC on the defendant's motion for summary judgment. (Docket Entry 79.) The plaintiff, Barbara Harris ("Harris"), filed this action pursuant to 42 U.S.C. §§ 2000e et seq. alleging unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Upon the resolution of previous motions,[1] the sole remaining cause of action is Harris's claim that the defendant, Richland Community Health Care Association, Inc. ("RCHCA"), retaliated against her by terminating her after she reported certain alleged financial misconduct on the part of other employees of RCHCA and after she filed a charge of discrimination ("SCHAC Charge") with the South Carolina Human Affairs Commission ("SCHAC"), the state agency responsible for administering Title VII on behalf of the federal Equal Employment Opportunity Commission ("EEOC"). (See Second Am. Compl., Docket Entry 59.)

**BACKGROUND**

Harris is an African American woman who formerly served as the Deputy Executive/Human Resources Director for RCHCA. She was promoted to Chief Operating Officer in 2005, a position

---

[1] See Docket Entries 57 and 72.

including, in addition to her human resources responsibilities, the duty of ensuring corporate compliance with internal policies and federal and state law. RCHCA is a not-for-profit organization that is heavily dependent on federal funding to fulfill its corporate purpose to provide health care to the medically under-served, such as the homeless and mentally ill.

Taking the facts in the light most favorable to Harris, the following facts are pertinent to Harris's claim of retaliation. In the fall of 2005, Harris had concerns regarding some issues of corporate compliance relating to RCHCA's finances, which she had raised with her supervisor and attempted to raise with a federal official who was her contact for RCHCA projects. She was scheduled to make a report on these issues at a meeting of the RCHCA Board of Directors on September 29, 2005. At that meeting, a Board member began publicly to "dress down" Harris regarding an unrelated matter and confronted her in a manner that Harris found intimidating and humiliating. (Harris Dep. at 28-30, Docket Entry 79-3 at 30-32.) When she returned home that evening, Harris sent an e-mail to her federal contact regarding the financial issues. (Harris Dep. Ex. 2, Docket Entry 79-5 at 9.) An investigation ensued, the results of which the parties characterize differently, but are not material to Harris's retaliation claim.

Also following the stormy Board meeting, Harris complained to her supervisor regarding the Board member's conduct toward her and the treatment of women generally at RCHCA. (Harris Dep. Ex. 3, Docket Entry 79-5 at 11.) On October 5, 2005, a few days after the Board meeting, Harris filed a SCHAC Charge alleging that she had suffered discrimination on the basis of gender, age, and color, as well as retaliation. (Harris Dep. Ex. 7, Docket Entry 79-5 at 26-37.) Significantly, Harris attached to her SCHAC Charge certain documents relating to other employees at RCHCA, including confidential personnel evaluations of two physicians employed by RCHCA. (Docket Entries 84-2 and 84-3) (Sealed). Additionally, Harris attached a collection of letters and memoranda, some of

which appear to be communications between attorneys regarding a separate employment dispute. (Docket Entry 84-4) (Sealed). These documents were in Harris's possession as Director of Human Resources for RCHCA.

This litigation ensued in due course. During discovery in the instant action, RCHCA became aware that Harris had provided the confidential documents at issue to SCHAC as part of her SCHAC Charge. On October 11, 2007, approximately six months after RCHCA made this discovery and over two years after Harris filed her initial[2] SCHAC Charge, RCHCA terminated Harris's employment on the stated ground that she had violated RCHCA policy by disclosing confidential documents.

## DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* issue of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty

---

[2]In December of 2007, Harris filed another charge alleging retaliation, which is the sole issue remaining in this action. (See Second Am. Compl., Docket Entry 59; Timeline of Events, Docket Entry 79-8.)

Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. The Reeves Court stated:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

Reeves, 530 U.S. at 148. The Court of Appeals for the Fourth Circuit has stated that the Reeves Court instructs more broadly regarding the factors "on which the appropriateness of a judgment as a matter of law will depend in any case and will include 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employers' case and that properly may be considered on a motion for judgment as a matter of law.'" Dennis, 290 F.3d at 649 (quoting Reeves, 530 U.S. at 148-49)).

B.   Burden Shifting in Employment Cases

A plaintiff may demonstrate discrimination or retaliation through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio

Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of either race discrimination, age discrimination, or retaliation, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). The defendant's burden "is a burden of production, not persuasion." Id. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.'" Holland, 487 F.3d at 214 (quoting Reeves, 530 U.S. at 142).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was "'not its true reason[], but [was] a pretext for discrimination.'" Holland, 487 F.3d at 214 (quoting Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004)). Accordingly, the plaintiff's burden of demonstrating pretext "'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.'" Id. (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981)); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Holland, 487 F.3d at 214 (quoting Burdine, 450 U.S. at 256).

"'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated.'" Holland, 487 F.3d at 215 (quoting Reeves, 530 U.S. at 148). However,

if the plaintiff creates only "a weak issue of fact as to whether the employer's reasons were untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "'the probative value of the proof that the employer's explanation is false.'" Id. (quoting Reeves, 530 U.S. at 149). To carry her "merged" burden to establish pretext and intentional discrimination, a plaintiff must prove "*both* that the reason was false, *and* that discrimination was the real reason for the challenged conduct.'" Holland, 487 F.3d at 218 (quoting Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997)) (emphasis added) (discussing plaintiff's retaliation claim); see also Burdine, 450 U.S. at 256 (discussing merging of plaintiff's burdens).

**C.    Retaliation under Title VII: *Prima Facie* Case**

Title VII's anti-retaliation section provides in pertinent part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Harris must show: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal link between the protected activity and the adverse employment action. See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253 (4th Cir. 1998); Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998) (ADEA and Title VII). For purposes of this motion, RCHCA concedes that Harris suffered adverse employment action; thus, only the first and third elements are in dispute.

"Protected activity" under the statute falls into one of two categories: opposition or participation. Crawford v. Metro. Gov't of Nashville & Davidson County, 129 S. Ct. 846, 850 (2009); Laughlin, 149 F.3d at 257. "Oppose" means "to resist or antagonize . . . ; to contend against;

to confront; resist; withstand." Crawford, 129 S. Ct. at 850 (quoting Webster's New International Dictionary 1710 (2d ed. 1958)). An employee need not instigate or initiate a complaint to be covered by the opposition clause. Id. at 851; see also Laughlin, 149 F.3d at 259 ("To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim."). When an employee engages in opposition activity, courts have typically applied a balancing test, weighing Title VII's purpose to protect employees who are opposing discrimination against Congress's desire not to prevent employers from legitimately disciplining their employees or to interfere in the objective selection and control of personnel. Laughlin, 149 F.3d at 257, 259. This test essentially inquires whether, in balancing those competing interests, the employee's opposition conduct was reasonable. See id.; see also Dea v. Washington Suburban Sanitary Comm'n, 11 Fed. Appx. 352, 360 (4th Cir. 2001) (unpublished) ("To be protected under Title VII's Opposition Clause, [the plaintiff] must also establish that the nature of his opposition conduct was reasonable.").

Conduct that is considered "participation," however, receives broader protection. Laughlin, 149 F.3d at 259 n.4. The statute outlines certain activities that are considered "participation": "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." Laughlin, 149 F.3d at 259. Unlike that of the opposition clause, the language of the participation clause does not permit a reasonableness analysis as to the employee's conduct. Glover v. South Carolina Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999). Despite this broader protection, however, employees cannot immunize improper behavior simply by filing an EEOC complaint. Id. at 414. "Employers retain, as they always have, the right to discipline or terminate employees for any legitimate, nondiscriminatory reason." Id. Where an employee's conduct is distinct and separable from the protected activity, even if related to it, Title VII's protection is not available. See id.

*PJG*

**D. Harris's Conduct**

As stated above, whether characterized as opposition or participation, to avail herself of the retaliation protections of Title VII, Harris must have engaged in "protected activity." Although filing the SCHAC Charge is undoubtedly protected activity under the statute, 42 U.S.C. § 2000e-3(a) (listing "making a charge" as participation activity), RCHCA contends that Harris's use of confidential employee information is *not* protected activity.[3] See Laughlin, 149 F.3d 253 (holding that where a plaintiff removed confidential documents from her supervisor's desk, photocopied them, returned them, and provided the unsolicited copies to another employee for that employee's use, the plaintiff had not engaged in protected activity). Her unilateral disclosure of the sensitive information, RCHCA contends, is distinct and separable from the filing of her SCHAC Charge. See Glover, 170 F.3d at 415. The court agrees.

The facts of the instant case are indeed different in some significant ways from those of other cases relied upon by RCHCA addressing the use of confidential information in connection with an employment discrimination dispute. Cf. Laughlin, 149 F.3d at 253 (holding that where a plaintiff removed confidential documents from her supervisor's desk, photocopied them, returned them, and provided them to another employee for that employee's use, she had not engaged in protected activity under either the participation or opposition clause); Niswander v. Cincinnati Ins. Co., 529 F.3d 714 (6th Cir. 2008) (holding that an employee's disclosure of confidential documents, which

---

[3]At oral argument on RCHCA's motion, RCHCA acknowledged for purposes of this motion that activity that takes place prior to the filing of an imminent SCHAC Charge may constitute protected participation activity in certain circumstances. Accordingly, the court need not address the issue of whether Harris's use of the confidential documents *for a charge she had yet to file* qualifies as protected participation activity.

Further, there appears to be no dispute that Harris's actions in reporting certain alleged financial misconduct on the part of other employees of RCHCA were not "protected activity" under Title VII.

were in her possession but irrelevant to her claim, to her attorney to "jog her memory regarding instances of retaliation" was not a protected activity under either the participation or opposition clause); O'Day v. McDonnell Douglas Helicopter Co., 79 F.3d 756 (9th Cir. 1996) (holding that where an employee took confidential documents arguably to preserve evidence of her employer's unlawful employment practices and showed them to a co-worker, she had not engaged in a protected activity under the opposition clause). Here, for example, unlike Laughlin and O'Day, Harris was legitimately in possession of the confidential information in her capacity as Director of Human Resources. Moreover, she used the information in support of her own charge rather than that of another employee. Finally, she disclosed the confidential information to no one other than the agency responsible for enforcing Title VII. Based on these differences, Harris argues that a genuine issue of material fact exists as to whether her use of documents at issue was protected activity, contending that her use of the documents was permissible in her role as the human resources director.

The court cannot agree. Although legitimately in possession of the documents in her corporate capacity, Harris has not presented sufficient evidence from which a reasonable jury could find that she legitimately disclosed those documents in her role as a human resources officer for RCHCA. She does not dispute that she did not discuss the disclosure of the documents or the filing of the charge with anyone else at RCHCA beforehand; nor did she receive authorization from her supervisor or the Board prior to disclosing the documents. RCHCA's written corporate policy allowed Harris, in her capacity as a corporate official, to disclose confidential personnel documents in the following ways: (1) she could permit employees to review their own personnel records in Harris's office; (2) she could provide supervisors with limited access to relevant portions of the personnel records of employees under their supervision or seeking a position within their

department; or (3) Harris, as Deputy Executive/Human Resource Director, could receive and respond to requests for access to employees' records from the general public. This third provision required that Harris seek the advice of RCHCA's attorney if Harris was unsure of how to handle the request, and further required the Executive Director/Chief Executive Officer to maintain these requests and place a copy in the employees' records. (Harris Dep. Ex. 11, Docket Entry 79-5 at 44-45.)

No reasonable jury could find that Harris's use of the documents at issue was permissible under this policy. At the hearing, Harris's counsel characterized her conduct as "official" in her capacity as the "corporate compliance officer" on behalf of the corporation to show that "women were treated differently by the corporation." This contention, however, is only remotely supported by the weakest of evidence: a listing of other female employees in Harris's SCHAC Charge in response to a question whether other individuals were treated the same or worse than Harris under the same or similar circumstances, and an assertion in Harris's SCHAC Charge that the "men make the decisions" and often exclude her. (Docket Entry 79-5 at 32.) This scintilla of evidence is simply insufficient to survive summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (holding that in a motion for summary judgment, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff"); Young v. Prince George's County, Maryland, 355 F.3d 751, 755 (4th Cir. 2004) (requiring evidence that is "significantly probative" and holding that a mere scintilla of evidence is not enough to create a fact issue); see also Reeves, 530 U.S. at 148 (stating that an employer is entitled to judgment as a matter of law where "the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred").

Moreover, the court observes that the time lag between the filing of the SCHAC Charge and Harris's termination belies any reasonable inference of a causal connection between those two events. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and holding a twenty-month period to be insufficient); Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two."); Pascual v. Lowe's Home Centers, Inc., 193 Fed. Appx. 229 (4th Cir. 2006) (unpublished) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment). Further, Harris herself has offered various reasons for her termination other than the filing of her SCHAC Charge. (See Harris Dep. at 268-70, 298-305, Docket Entry 79-6 at 37-39 and 67-74.) Harris's own inability to connect her termination to the protected activity of the filing of a SCHAC Charge shows that such a connection is speculative.

**E.     Pretext**

Even if Harris had presented sufficient evidence to establish a prima facie case of retaliation, RCHCA would still be entitled to summary judgment. In terminating Harris, RCHCA articulated a legitimate, nondiscriminatory reason—her breach of trust in releasing confidential employee information and other sensitive documents. RCHCA's written policy provides: "The Deputy Executive/Human Resources Director is responsible for the proper maintenance and protection of the record. Personnel records are confidential and must be safeguarded. Failure to keep personnel

records confidential may result in discipline, up to and including termination." (See Harris Dep. Ex. 11, Docket Entry 79-5 at 44.) Upon RCHCA's advancement of a legitimate, nondiscriminatory reason for Harris's termination, the burden shifts to Harris to establish that RCHCA's stated reason was not the real reason and was merely a pretext for discrimination. See Holland v. Washington Homes, Inc., 487 F.3d 208, 214 (4th Cir. 2007). Harris has presented no evidence from which a reasonable jury could find that RCHCA did not believe that her unilateral decision to use the confidential documents was a legitimate ground for termination. See id. at 217-18 (concluding that no reasonable juror could conclude the decisionmaker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decisionmaker] did not honestly believe that the threats were made" and noting that "'[i]t is the perception of the decisionmaker which is relevant.'") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)). Nor has she presented sufficient evidence that retaliation for the filing of the SCHAC Charge was the real reason. Harris relies on the passage of six months from the time RCHCA became aware of Harris's use of the confidential documents to her termination as her sole evidence that the stated reason was pretextual, arguing that if the use of the documents was the real reason, RCHCA would have discharged her immediately upon discovering it. Again, however, this time lapse alone is insufficient for a jury to reasonably infer that the filing of a SCHAC Charge over two years earlier was the real reason for Harris's termination. See Holland, 487 F.3d at 218 (requiring that a plaintiff show that the stated reason was false *and* that the true reason was retaliation).

## RECOMMENDATION

Harris cannot establish a prima facie case of retaliation. She has not presented sufficient evidence from which a reasonable jury could find that her unilateral decision to disclose the confidential documents in support of her SCHAC Charge constituted protected activity under Title

VII. Nor can she establish a causal connection between the filing of her SCHAC Charge and her termination over two years later. Moreover, even if she could establish a prima facie case of retaliation, she has not presented sufficient evidence from which a reasonable jury could find that (1) RCHCA did not believe that the disclosure of the documents was a legitimate reason to terminate Harris's employment, and (2) the filing of the SCHAC Charge—and not the disclosure of confidential documents—was the real reason for her discharge. Accordingly, the court recommends that RCHCA's motion for summary judgment (Docket Entry 79) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 15, 2009
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the district judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).