IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| BARBARA HARRIS, ) | C.A. No. 3:07-0421-CMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| ) | |
| RICHLAND COMMUNITY HEALTH ) | |
| CARE ASSOCIATION, INC. ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Through this action, Plaintiff Barbara Harris ("Harris") seeks recovery from her former employer, Defendant Richland Community Health Care Association, Inc. ("RCHCA"), for alleged violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"). Specifically, Harris alleges that she was terminated on October 11, 2007, in retaliation for filing of and participation in a charge of gender and race discrimination. The underlying charge was filed with the South Carolina Human Affairs Commission ("SCHAC") on October 5, 2005 ("SCHAC Charge").

Defendant RCHCA denies that Harris was terminated in retaliation for filing or participating in the SCHAC Charge. RCHCA, instead, maintains that it terminated Harris for violating RCHCA's employee-record confidentiality policy. That violation is, however, connected to Harris's SCHAC Charge because it consists of Harris's unilateral decision to attach other employees' confidential records to her SCHAC Charge. RCHCA learned of Harris's violation of the confidentiality policy after the present action was filed and terminated her employment six months after the discovery.[1]

---

[1] Plaintiff received her right to sue letter on or about November 1, 2006. She filed the present action in state court on January 8, 2007. The original complaint, which was subsequently

After Harris was terminated, she amended her complaint to assert a retaliation claim which is now the only claim remaining in dispute.[2]

## BACKGROUND

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), (g), DSC, this matter was referred to United States Magistrate Judge Paige J. Gossett for pre-trial proceedings and a Report and Recommendation ("Report"). On August 7, 2009, the Magistrate Judge issued a Report recommending that RCHCA's motion for summary judgment be granted in full. Dkt. No. 94. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Harris timely filed objections on August 3, 2009, and supplemented her objections on August 18, 2009, by filing a transcript requested by the court. RCHCA responded to Harris's objections on that same date.

The matter is now before the court for review of the Report. The Report is adopted in full as supplemented below. Defendant's motion for summary judgment is, therefore, granted.

## STANDARD

---

removed to this court, alleged two state law causes of action as well as a Title VII claim for sexual harassment and discrimination. Harris was terminated in October 2007, while the original complaint was in effect.

[2] In February 2008, several months after Harris's termination, RCHCA and other then-named Defendants moved for summary judgment. The Magistrate Judge recommended this motion be granted after Harris failed to file any opposition despite an extension of time in which to do so and after she failed to file an amended complaint adding a retaliation claim despite indicating an intent to do so. *See* Dkt. No. 46 (Report on initial summary judgment motion). Plaintiff objected to that recommendation, stating she was not abandoning her claims and still intended to amend the complaint to add a fourth cause of action for retaliation. Dkt. No. 48. She concurrently sought and was granted leave, with Defendants' consent, to file an amended, four-count complaint. Dkt. Nos. 49 & 50. Shortly thereafter, Plaintiff informed the court that she consented to dismissal of all but the retaliation claim. The retaliation claim is, therefore, the only claim at issue in this order.

As to dispositive matters, the Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1). The court reviews only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'") (quoting Fed. R. Civ. P. 72 advisory committee's note).

**DISCUSSION**

The court adopts in full the Report of the Magistrate Judge and writes further here only to address specific objections.

**Protected Activity.** Noting that this is a case primarily pursued under the participation clause, Harris asserts that the Magistrate Judge "erroneously found that the inclusion of [the confidential employment records of others] as attachments to [Harris's SCHAC] charge was not protected activity, and constituted a lawful, non-retaliatory reason to terminate her employment." The court construes this as a challenge to the Report's analysis (and resulting distinction) of *Glover v. South Carolina Law Enforcement Division*, 170 F.3d 411 (4th Cir. 1999).[3]

---

[3] Harris does not expressly mention *Glover* in her objection. Instead, she first suggests that the Magistrate Judge incorrectly relied on the timing of the disclosure of confidential documents. This argument is based on a misreading of the Report. *See* Report n. 3 (noting court need *not* address the timing issue in light of RCHCA's concession that participation could precede filing of a charge). Second, Harris argues that the Magistrate Judge erred in focusing on whether Harris

3

In *Glover*, the Fourth Circuit held that "an employer may not fire an employee because of her testimony in a Title VII proceeding." *Id.* at 414-15. The court declined "to adopt a reasonableness restriction" on the employee's testimony because to do so "would lead the federal courts into a morass of collateral litigation in employment discrimination cases." *Id.* at 415 (noting that, "[w]ith her immunity limited by a reasonableness requirement, a witness might be forced to evade or to refuse to answer depositions questions" which would lead to "inevitable clashes between inquisitive deposing attorneys and recalcitrant witnesses" and resulting "discovery motions and appeals").[4]

In reaching this decision, the court noted that its "holding does not permit employees to immunize improper behavior simply by filing an EEOC complaint." *Id.* at 414 (citing *Brown v.*

---

acted in her individual or official capacity in disclosing the documents. Harris maintains this is a distinction without a difference and that she, in any event, acted in an official capacity. The undersigned disagrees on both points. Harris clearly acted as an individual in filing her SCHAC charge in which she sought compensatory and punitive damages solely on her own behalf. Further, Harris's right to access or release the confidential records was solely in her official capacity and for limited purposes. Those purposes did not extend to filing documents in support of a charge against her employer.

[4] At the time of her deposition, Glover was employed by the South Carolina Law Enforcement Division ("SLED") in a managerial position. *Id.* at 412. For the nine years prior to this employment, Glover served as the United States Marshal for the District of South Carolina. During her employment with the Marshals Service, Glover "served as chair of the Marshals Service Equal Employment Opportunity Advisory Committee" and, in that capacity, "met and counseled" Jane Koball, a deputy marshal in South Dakota. *Id.* Glover's deposition was taken in Koball's Title VII action against the Marshals Service. In the course of that deposition, Glover offered a lengthy and negative discussion of her views of the individual who replaced her as United States Marshal for the District of South Carolina: Israel Brooks ("Brooks"). This portion of Glover's deposition covered "nearly one hundred pages of the 268-page deposition." *Id.* After receiving a complaint from Brooks, SLED Chief Robert Stewart ("Stewart") concluded "that Glover went out of her way through irrelevant and unresponsive answers to malign and disparage" Brooks. *Id.* at 412-13. Glover was disciplined for her testimony and later discharged for three stated reasons, one of which was her deposition testimony which Stewart, the relevant decisionmaker, concluded "demonstrated poor judgment." *Id.* at 413.

4

*Ralston Purina Co.*, 557 F.2d 570, 572 (6th Cir. 1977) which held that "an EEOC complaint creates no right on the part of an employee to miss work, fail to perform assigned work, or leave work without notice"). The court also distinguished two cases relied on by the employer explaining that "[a] careful reading of [the distinguished] cases . . . reveals that the adverse actions were predicated on legitimate, nondiscriminatory reasons and not on the protected activity itself." *Id.* at 415 (citing *Jackson v. St. Joseph State Hosp.,* 840 F.2d 1387, 1390-91 (8th Cir. 1988) and *Jones v. Flagship Int'l*, 793 F.2d 714, 726-29 & n. 14 (5th Cir. 1986)).

In distinguishing *Jackson*, the Fourth Circuit noted that "a claimant's abuse of a potential witness and use of significant company resources [in support of a charge] are not protected" activity. Similarly, in distinguishing *Jones*, the court noted that a "claimant's encouragement of other employees to file claims and join a separate class action suit against the employer is not protected" activity. As to both cases, the court noted that "the employee's conduct, although related to protected activity, was distinct and separable from that activity." *Id*. The court found no such separability between the act of testifying and the content or manner of the testimony, which was the conduct at issue in *Glover*. *Id.*

The critical issue is, therefore, whether Harris's disclosure of other employee's confidential employment records made in connection with the filing of her SCHAC Charge is " distinct and separable from [the protected] activity" of filing the charge. For the following reasons, the court concludes that disclosure is distinct and separable. First, Harris had access to these files only because of her official position with RCHCA. Second, Harris's access and permitted use of the documents was strictly limited by a written confidentiality policy of which Harris was aware and which did not allow for the particular use she made of the documents. Thus, in including these confidential documents in her SCHAC charge, Harris took advantage of her special position of trust

with the employer and violated a clear and lawful confidentiality policy designed for the protection of other employees.

It is also significant that employment files (particularly of individuals other than the claimant) are neither required to be filed as part of a charge nor something that a typical employee would be able to access for this purpose. Instead, such files would be obtained during the course of the SCHAC investigation if SCHAC deemed it appropriate to seek them. Further, if SCHAC did request the files, the employer would be afforded the opportunity (through someone acting on the employer's behalf) to insure that the disclosure was responsive and complete, subject to any appropriate protections. By unilaterally disclosing selected documents, some of which were of marginal if any relevance, Harris misused her position of special trust with her employer, subjected her employer to potential liability to individuals whose files were disclosed, and denied the employer the right to any protections or controls available in the normal investigatory process.[5]

---

[5] The documents which Harris disclosed included a negative performance evaluation of a male employee whom Harris claimed in her charge was treated more favorably than she. Harris Dep. Ex. 8. Harris acknowledged that she provided this document to SCHAC, even though it was "not . . . properly executed" in that it was not signed either by the evaluator (apparently Harris) or the employee. Harris Dep. at 219-20. Thus, this document, even if relevant, was not in a form which the employer would have provided to SCHAC in response to a proper request. Notably, the proper form would have revealed the identity of the evaluator (apparently Harris).

Harris also included a negative performance evaluation of a female physician employee ("Female M.D. 1"). Harris Dep. Ex. 9. While this evaluation is signed (by someone other than Harris), it does not bear any apparent relevance to Harris's charging document because Female M.D. 1 is not listed as a comparator or witness. Thus, it is unlikely this document would have been requested by SCHAC in the course of any investigation.

The third set of confidential documents relates to a dispute between Female M.D. 1 and another female physician ("Female M.D. 2"). Female M.D. 2 is listed as a comparator in Harris' charge, and Harris apparently obtained her permission to at least share her concerns, and possibly her file, with SCHAC. It is not, however, apparent how a dispute between these two female physicians supports Harris's charge of gender discrimination. Thus, it is somewhat doubtful that these particular documents would have been sought by SCHAC in any investigation. Further, the dispute between these physicians apparently arose out of ethics allegations made by Female M.D. 2 against Female M.D. 1. The underlying charges (which were notarized by Harris) are included with the documents provided to SCHAC although it is not clear why these would have been kept in

This is distinguishable from circumstance in which a human resources officer, *acting on behalf of his or her employer*, provides documents in response to a SCHAC request.

Under these circumstances, the undersigned concludes that Harris's disclosure of other employees' confidential files, to which she had access only because of her position as RCHCA's chief operating officer, is more akin to the improper behavior in cases distinguished in *Glover* than it is to Glover's deposition testimony. *See Glover*, 170 F.3d at 415 (distinguishing *Jackson* and *Jones*).

While not controlling in this district, the Sixth Circuit's decision in *Niswander v. Cincinati Ins. Co.*, 529 F.3d 714 (6th Cir. 2008), is instructive. There the court addressed whether an employee's delivery of her employer's "confidential, propriety documents to her lawyers in [an Equal Pay Act] class-action lawsuit" constituted protected activity under either the participation or opposition clause. *Id*. at 716. After initially concluding that the disclosure was not participation, at least in the only then-pending action, the court addressed the special circumstances presented by disclosure of confidential information *both* in the context of participation and opposition as follows:

> The analysis of a participation claim does not generally require a finding of reasonableness, as opposed to the requirement that oppositional conduct be reasonable. *But when confidential information is at issue, a reasonableness requirement is appropriate*. Given that an individual who has filed a lawsuit under Title VII has available the tools of civil discovery, a showing of reasonableness when confidential documents are disseminated outside of the discovery structure provides protections for employees and employers alike.

---

RCHCA's employee files despite likely being subject to third-party confidentiality rules. Another document in this set is a *draft* letter from RCHCA's attorney to Female M.D. 2's attorney which was likely subject to attorney-client privilege or work product protection. While Harris may have obtained permission from Female M.D. 2 to reveal some or all of these documents, she clearly did not get permission from Female M.D. 1, who is referred to in the ethics charge, to do so. Neither did she receive permission from RCHCA to share the draft letter from its attorney or the ethics charge against one of its employees.

7

> Based on the analysis applied by the courts in the cases discussed above, we believe that the following factors are relevant in determining whether Niswander's delivery of the confidential documents in question was reasonable: (1) how the documents were obtained; (2) to whom the documents were produced, (3) the content of the documents, both in terms of the need to keep the information confidential and its relevance to the employee's claim of unlawful conduct, (4) why the documents were produced, including whether the production was in direct response to a discovery request, (5) the scope of the employer's privacy policy, and (6) the ability of the employee to preserve the evidence in a manner that does not violate the employer's privacy policy. These factors are designed to take into account the employer's "legitimate and substantial interest in keeping its personnel records and agency documents confidential" and yet protect the employee's alleged "need for surreptitious copying and dissemination of the documents." *Jeffers v. Harris County Cmty. Action Ass'n.*, 615 F.2d 1025, 1036 (5th Cir. 1980).

*Id.* at 726 (emphasis added).[6]

Applying the above factors, the court noted that Niswander had been authorized access to the confidential documents, had them in her home office, reviewed them in response to a request from her attorneys, and delivered them only to the attorneys. In light of these facts, the court concluded that the first two factors might favor Niswander. All other factors favored the employer. For example, the attorneys' request for documents did not reach the subject matter to which the documents arguably related (jogging Niswander's "memory about incidents that she believed constituted retaliation," a claim not yet pending but which she had discussed with her attorneys). *Id.* at 726-27. To the extent the documents might be relevant to any future claim, the court noted that the "evidence" could have been preserved without violating the company's privacy policy. For

---

[6] The documents at issue in *Niswander* included confidential claim-file documents which Niswander provided to her attorney "to help trigger [her] memory of instances of alleged retaliation" which might be relevant to a not-yet-filed retaliation action. *Id.* at 721-22. Niswander asserted that she provided the documents in response to her attorneys' request that she provide any documents related to her employment which she had not already sent in so that the attorneys could respond to a pending request for production in the pending EPA action. *Id.* at 721-22. Noting that Niswander had never read the request for production and conceded that the documents in question were neither directly nor indirectly relevant to the EPA action, the court concluded that Niswander's delivery of the documents did not constitute "participation" in the EPA case. *Id.* at 721-22.

8

these reasons, even viewing the evidence in the light most favorable to Niswander, the court held "that her production of the documents was not reasonable under the six-factor test set forth above." *Id.* at 727. The court also noted that "even if the [employer's] decision to terminate Niswander for producing the documents ultimately proved to be flawed, Niswander has failed to show the presence of a genuine issue of material fact regarding [the decisionmaker's] honest belief that [Niswander] had violated the company's privacy policy." *Id.* at 728. Thus, she could not show pretext.

Although it recognized that actions constituting participation are generally not subject to a reasonableness analysis, the Sixth Circuit characterized the above test as a reasonableness test applicable to the unique issue of when disclosure of confidential documents is subject to protection under the opposition *or* participation clauses. In light of *Glover*, the Fourth Circuit is less likely to consider "reasonableness" a proper characterization of any test applied to actions fairly characterized as participation. Nonetheless, the undersigned believes the Fourth Circuit would find the factors useful in determining whether disclosure of confidential documents which bears some relationship to participatory action is "separate and distinct" from the participatory action. The undersigned applies the *Niswander* factors with that understanding and, ultimately, reaches the same result as did that court.

As in *Niswander*, Harris was authorized access to the confidential documents but that access was for limited purposes. Likewise, Harris's production of confidential documents was limited to disclosure to a single entity (SCHAC), which she presumed would use discretion in any use or further dissemination. Thus, as in *Niswander*, the first two factors arguably favor Harris. As in *Niswander*, however, the remaining factors do not. For example, the content of the documents was only marginally relevant to Harris's charge and was wholly unnecessary as an attachment to the

charge (third factor).[7] The documents were not produced in response to any request from SCHAC, though Harris was clearly aware that such a request could be made to her employer in the future and had no reason to believe the employer would not properly respond if such a request was made (fourth factor). The employer's written confidentiality policy clearly prohibited the disclosure and was well known to Harris (fifth factor). Harris has conceded she did not fear the evidence would be lost if she did not disclose it (sixth factor). This court, therefore, concludes that Harris's disclosure of confidential documents was sufficiently separate and distinct from the underlying SCHAC Charge to be subject to disciplinary action. Further, as in *Niswander*, Harris has produced no evidence that the employer's stated reason for her discharge, an honest belief that Harris had violated the confidentiality policy, was not its true reason for her termination.

**Mixed Motive Analysis.** Harris also suggests that the Magistrate Judge erred by ignoring evidence of mixed motive. There is, however, no evidence that RCHCA's stated reason for Harris's termination (her disclosure of confidential documents) was not the sole reason for Harris's termination.

Through her deposition, Harris states her belief that her termination was the result of improper pressure from Issac Williams, Chairman of RCHCA's Board of Directors. Harris contends Williams had both the opportunity and motive to exert such pressure and that *part* of his motivation could have been Harris's filing of a charge with SCHAC.

Harris has not, however, presented any prediction of admissible evidence that Williams, in fact, had any involvement in her termination decision. Neither has she presented any prediction of

---

[7] As a Human Resources specialist, Harris is fairly charged with knowledge of what is necessary to support a claim and certainly with the confidentiality of the documents she provided.

10

admissible evidence that, even if he did influence the decision, he did so for any reason other than RCHCA's stated reason for the termination..

Harris's failure in this regard leaves the court with a record which suggests multiple *possible* reasons for Williams' animosity towards Harris, only one of which would support her sole surviving claim for retaliation in violation of Title VII (presuming he did influence the termination decision). RCHCA has, on the other hand, presented uncontroverted evidence that Harris's termination was due to her violation of RCHCA's policy on confidentiality of employment records. Plaintiff's "evidence" of her own suspicions of other motivation is not enough to show that this stated reason is pretext.

Harris's own testimony as to the multiple potential reasons for her differences with Williams is not enough to support an inference that RCHCA's stated reason for her termination is pretext. For example, Plaintiff testified that Williams flew into rage during a September 29, 2005 Board meeting, threatening to terminate Plaintiff the "very next time" she disobeyed a direction from him. This was roughly a week before Harris filed her SCHAC Charge and well before anyone at RCHCA was given notice of the complaint. *See infra* "SCHAC Charge."[8] Thus, Williams' animosity towards Harris clearly predated the SCHAC Charge.

---

[8] Harris's SCHAC Charge is dated October 5, 2005, and expressly and primarily complains of Williams' actions during the September 29, 2005, Board meeting. Plaintiff also makes general reference to two earlier events which may suggest gender or racial bias by Williams. The first involves an inquiry from Williams as to why one employee (a white male) made less than another employee (a black female). Depending on context and related statements, this inquiry may suggest either racial or gender bias. The second involves Williams' apparently rude behavior during a fund-raising event in which he asked Harris and three other black females to give up their seats at the RCHCA table because he and his guests wanted to sit there. The alleged comments suggest that Williams may not, at that time, have been aware that the four women were RCHCA employees or guests. Harris Dep. Ex. 7. Nonetheless, the court assumes for present purposes that the comments may have suggested gender or racial bias.

11

Immediately after the September 29 board meeting, Plaintiff e-mailed a complaint to RCHCA's contact at the Bureau of Primary Health Care (a funding agency) alleging, *inter alia*:

> The majority of the Board of Directors are corrupt. Especially the Chairman of the Board. He uses his position as Chair for personal gain and continues to interfere in the day to day operations of the center. He intimidates staff and uses threats of firing staff to get his way.

Harris Dep. Ex. 2.

Plaintiff followed this e-mail with a letter dated October 13, 2005, making similar allegations and including the following reference line: "Re: Mr. Isaac Williams, Board Chair." Harris Dep. Ex. 4. This letter was copied to RCHCA's CEO, Wallace Brown, Sr. While there is no evidence as to whether or when this letter was provided to Williams, it is clear that he was aware of the allegations prior to Harris's termination.[9] Thus, it is at least equally likely that whatever animosity Williams held toward Harris at the time of her termination resulted from their prior encounters or her accusations that he was corrupt as it is that his animosity resulted from the charges she filed with SCHAC.

Contrary to Harris's objection memorandum, this conclusion does not require the court to allow this case to proceed to trial as a mixed motive case. This is because the evidence only suggests that there were multiple *possible* motives. It is not sufficient to establish that any one (or any number) of them was, in fact, the motivating factor. More critically, as discussed above, there is no evidence that the specific motive stated by RCHCA (violation of confidentiality policy) was not its true motive.

---

[9] The parties have not directed the court to any evidence regarding when this letter was provided to Williams. He was, however, clearly aware of the concerns raised in the letter no later than May 2006, when a site visit was conducted by the responsible agency. *See* Harris Dep. Ex. 17 (Letter to Williams from the Bureau of Primary Health Care referring to May 2006 site visit–stamped received August 8, 2006).

12

## CONCLUSION

For the reasons set forth above and in the Report and Recommendation, which is adopted in full and incorporated herein, the undersigned grants Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

                                            s/ Cameron McGowan Currie
                                            CAMERON MCGOWAN CURRIE
                                            UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 14, 2009